**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| STURM, RUGER & CO., INC. )<br><br>    Plaintiff, )<br><br>v. )<br><br>AMERICAN OUTDOOR BRANDS )<br>CORPORATION, SMITH & WESSON )<br>CORP., )<br>and )<br>THOMPSON/CENTER ARMS, )<br>COMPANY, LLC, )<br><br>    Defendants. ) | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Sturm, Ruger & Co., Inc. (hereinafter referred to as "Ruger") alleges as follows:

### NATURE OF THE CASE

1. Ruger seeks injunctive relief and damages for acts of trade dress infringement, unfair competition and deceptive trade practices by the defendants in violation of the laws of the United States and the State of New Hampshire.

### THE PARTIES

2. Plaintiff, Ruger, is a corporation, organized and existing under the laws of the State of Delaware, with its main corporate offices located at 1 Lacey Place, Southport, Connecticut 06890.  Ruger is a leading manufacturer of firearms in the United States with product distribution throughout the world.  Ruger manufactures firearms in three of the four key categories, including rifles, pistols,

and revolvers. Ruger manufactures, and for many years has manufactured, its popular 10/22® rifle at its manufacturing facility located in Newport, New Hampshire.

3. Defendant, American Outdoor Brands Corporation ("AOBC") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104.

4. Defendant, Smith & Wesson Corp. ("S&W") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104. S&W is a wholly owned subsidiary of AOBC and is registered to do business in the State of New Hampshire.

5. Defendant, Thompson Center Arms Company, LLC ("Thompson/Center") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104. Upon information and belief, Thompson/Center is a subsidiary of S&W.

6. Upon information and belief, AOBC owns and/or controls all of S&W's products and/or branding.

7. Upon information and belief, AOBC owns and/or controls all of Thompson/Center's products and/or branding.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the parties and the subject matter of this action pursuant to 15 U.S.C. §1121 (actions arising under the Lanham Act), 15

U.S.C. §1125(a) (trade dress infringement and unfair competition under the Lanham Act), 28 U.S.C. §1331 (actions arising under the laws of the United States), and 28 U.S.C. §1338(a) (actions arising under an Act of Congress relating to trademarks).  This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. §1367(a).

9. This Court has personal jurisdiction over each defendant because they are doing business in the State of New Hampshire. S&W is registered to do business in New Hampshire and, upon information and belief, S&W operates a research and development facility located in Somersworth, New Hampshire. Moreover, the defendants have purposefully directed their activities to New Hampshire by knowingly and intentionally marketing, selling and/or distributing the infringing rifle at issue in this lawsuit to consumers in the State of New Hampshire and throughout the United States.

10. This Court also has personal jurisdiction over the defendants because Ruger suffers damage to its intellectual property rights here in New Hampshire. Upon information and belief, the defendants have copied the trade dress of the popular Ruger® 10/22® rifle that is being manufactured in Newport, New Hampshire. By copying the rifle, the defendants would have noticed that Ruger's rifle is stamped "Newport, NH" in accordance with applicable BATFE[1] regulations.

11. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §1391(b) and (c) because the firearm at issue is primarily manufactured by Ruger in the State of New Hampshire.  Damages from defendants' trade dress

---

[1] Bureau of Alcohol Tobacco Firearms and Explosives.

infringement are suffered by Ruger in the State of New Hampshire, and the bulk of Ruger's witnesses are located within the State of New Hampshire.

## FACTS COMMON TO ALL COUNTS

12. In the early 1960's, William Ruger, in collaboration with Harry Sefried and Doug McClenahan, developed the 10/22® autoloading rifle (the "10/22 rifle").[2] The 10/22 rifle was formally launched in 1964 and, since then, the 10/22 rifle has become one of the most popular .22 caliber rifles in firearms history. Ruger has sold millions of 10/22 rifles worldwide and its popularity is evidenced by the fact that, in 2014 – the 50th anniversary of the rifle – it remains one of the most popular firearms in the Ruger lineup. As one commenter explains:

> Ever since the advent of the .22 [long rifle] cartridge in 1887, it has been a rite of passage for many "good (and responsible) little boys" to receive a rifle chambered in such for Christmas. In the past, those rifles have included the Stevens No. 141/2 Little Scout single-shot, Winchester 1890 pump and Remington Model 511 Scoremaster bolt-action. But beginning in 1964, the enticingly long, brightly wrapped package under the tree was likely to contain a Ruger 10/22, which eventually became one of the most popular .22 semi-autos in firearm history.[3]

13. Over the years, Ruger has introduced a variety of configurations and finishes, but the original design and concept for the 10/22 rifle has remained virtually the same since 1964.

---

[2] An autoloading (or semi-automatic) rife is a rifle that fires a single round each time the trigger is pulled, uses gas, blowback, or recoil to eject the spent cartridge after the round has traveled down the barrel, chambers a new cartridge from its magazine, and resets the action; enabling another round to be fired once the trigger is pulled again.

[3] Rick Hacker, Ruger 10/22 A Look At the History of One of the Most Popular Rimfire Rifles Ever Produced, Shooting Illustrated (Feb. 24, 2012) http://www.shootingillustrated.com/index.php/22082/ruger-1022/.

## THE RUGER 10/22 TRADE DRESS

14. Over the past 55 years, one of Ruger's most popular and best-selling firearms has been the .22 caliber 10/22 rifle. The following is a representative sample of the different varieties of the 10/22 rifle that Ruger offers for sale:





15. The overall configuration and external appearance of the Ruger 10/22 rifle is unique and distinctive from .22 caliber rifles produced by other manufacturers.

16. The distinctive appearance of the Ruger 10/22 rifle is instantly recognizable by those familiar with rifles.

17. The Ruger 10/22 rifle has the following features (this list is non-exhaustive):

    a. The receiver is flat-sided with a distinctive profile where the top edges taper downward towards the rear of the receiver:



**REAR**                                      **FRONT**

    b. The right side of the stock is shaped in a unique manner around the ejection port of the receiver;

    c. The stock section immediately below the ejection port is shaped in a shallow u-shape pattern following the line of the ejection port;

    d. Behind the ejection port, the line of the stock rises up for a short distance, then rises up further to meet the rear of the receiver;

e.   The bottom edge of the ejection port steps up toward the rear;

f.   The magazine is flush with the bottom of the stock and is nearly as wide as it is long;

g.   The magazine well is formed as part of the trigger guard/fire control housing and the receiver;

h.   The magazine well is visible from the bottom of the rifle;

i.   The magazine release protrudes below the bottom surface of the stock;

j.   The bolt lock is a small metal plate inset below the bottom surface of the stock and adjacent to the magazine release;

k.   There is a notch in the bottom of the stock just forward of the magazine well;

l.   There is a cylindrical cross-button safety that is located on the trigger guard forward of the trigger;

m.   At the junction where the barrel and receiver meet, the front face of the receiver is flat and the height of the receiver is higher than the top of the barrel;

n.   At the junction where the barrel and receiver meet, the top of the receiver is shaped in a shallow arching pattern over the top of the barrel;

o.   At the junction where the barrel and receiver meet, the receiver is rounded on each vertical corner;

p.   The branding for the rifle is located on the side of the receiver opposite the bolt;

q.   Along the top center portion of the barrel it is stamped: "RUGER, NEWPORT, NH, USA;"

r.   The bolt lock on the 10/22 rifle is a unique toggle switch which is located at the front of the trigger guard.

18. The trade dress of the 10/22 rifle is an arbitrary combination of elements which forms a nonfunctional design.

19. Ruger's trade dress is the result of specific design choices made during the development of the rifle to achieve the final appearance and is not dictated by utilitarian purposes.

20. It is not necessary to make a semi-automatic .22 caliber rifle which looks like the 10/22 rifle to perform the same functions or to be successful in the marketplace.

21. In addition to Ruger, the most recognized manufacturers of semi-automatic .22 caliber rifles include Marlin, Savage, Mossberg, Remington, and CZ-USA.

22.   Semi-automatic .22 rifles from Marlin, Savage, Mossberg, Remington and CZ-USA each have their own trade dress and none would be confused with a Ruger 10/22 rifle or with one another.

23. Semi-automatic .22 rifles from Marlin, Savage, Mossberg, Remington, and CZ-USA all successfully perform the same functions as the 10/22 rifle, as evidenced by the fact that they are widely sold and all meet the requirements of a

semi-automatic .22 caliber rifle. In fact, S&W sells a semi-automatic .22 rifle, the M&P®15-22 (including many variants), that falls into this category. True and accurate photographs of these rifles are attached hereto as Exhibit A.

24. The trade dress of the Ruger 10/22 rifle has acquired a substantial level of source identifying capability, *i.e.* secondary meaning.

25. This secondary meaning is the result of, among other things, the widespread popularity and use of the Ruger 10/22 rifle worldwide and especially throughout the United States and Canada.

26. This secondary meaning is also the by-product of Ruger's extensive marketing and promotional efforts, along with third-party publicity.

27. The Ruger 10/22 rifle is promoted by independent third parties (*e.g.* Davidsons, Inc.).

28. Ruger has promoted the sale of the 10/22 rifle through extensive advertising in newspapers and magazines as well as appearances at trade shows and other events worldwide and, in particular, the United States and Canada.

29. Ruger has spent millions of dollars marketing the 10/22 rifle.

30.   Publications disseminated throughout the United States and abroad have included feature articles about Ruger's 10/22 rifle.

31. The 10/22 rifle has been generally recognized in the press as the leading .22 caliber semi-automatic rifle in the worldwide market.

32. Articles featuring the 10/22 rifle have also featured the distinctive appearance of the Ruger 10/22 rifle.  True and accurate copies of a few such advertisements and publications are attached hereto as Exhibit B.

33. Ruger has developed valuable goodwill in the trade dress of the 10/22 rifle and the relevant public has come to know, recognize, and identify the distinctive look and appearance of a .22 caliber semi-automatic rifle as originating from Ruger.

34. Ruger has not licensed or granted to the defendants the authority, permission, or any other right to make, manufacture, use, offer for sale or sell a rifle that copies or otherwise utilizes the trade dress of the Ruger 10/22 rifle or that resembles the Ruger 10/22 rifle.

### DEFENDANTS' ACTIONS: DESIGN AND MANUFACTURE

35. The defendants have purposefully advertised, promoted, offered for sale, sold, and/or distributed, and continue to advertise, promote, offer for sale, sell, and/or distribute a duplicate of Ruger's 10/22 rifle in an attempt to capitalize on the popularity and goodwill associated with the 10/22 rifle that has been created by Ruger over five decades. The defendants' rifle is known as the "T/CR22" and is depicted below:



36. On or about May 3, 2018 and in conjunction with the National Rifle Association ("NRA")'s Annual Meeting, Defendants launched the T/CR22.

37. The defendants market the T/CR22 with the tagline "Rimfire Redefined."[4]

---

[4] Rimfire is a method of ignition for metallic firearm cartridges. The .22 caliber long rifle cartridge is a rimfire ammunition that is used in both the 10/22 and the T/CR22.

38. On May 9, 2018, the NRA publication "Shooting Illustrated" published a review of the T/CR22. A true and accurate copy of that review is attached hereto as Exhibit C.

39. The May 9th NRA article quotes Danielle Sanville, brand manager of Thompson/Center Arms as saying (in part): "[w]e've taken the opportunity to *contemporize a classic* through advancements in design, and we are confident that our customers will appreciate the features in the new T/CR22 rifle." *Id.* (emphasis added).

40. Immediately after the Thompson/Center quote reference above, the NRA article continues:

> Which *classic* are they bringing into the 21st century? A few clues lie in the design of the rifle. Rimfire aficionados might notice that the overall profile of the rifle *looks similar* to another popular semi-automatic rimfire on the market, *and they'd be right*. The *receiver is built with the same footprint as the popular Ruger 10/22*, enabling the all-new T/CR22 to fit into any aftermarket stock fit for Ruger's rimfire.

Exhibit C, at p. 2 (emphasis added).

41. Ruger has been contemporizing the 10/22 rifle for decades.

42. On or about July 26, 2018, the NRA publication "American Hunter" published a video on Youtube reviewing the T/CR22. That video review can be found at: https://www.youtube.com/watch?v=DFhEv7M7R4A.

43. The July 26th video review is conducted by Jon Draper, Associate Editor of American Hunter. Mr. Draper begins his review, in part, with the following statement:

> Don't let your eyes deceive you. While this may look like another version of *that common rimfire* this little semi-auto owes its allegiance to Thompson/Center…First things first, yes, this gun looks familiar. Very familiar, in fact. It also happens to function so closely to that *other* gun that stamped right on the T/CR22 spec

sheet reads the phrase "compatible with most aftermarket 10/22 parts and accessories"…. (emphasis added)

Mr. Draper continues:

> How is this possible? Well, without spending more money and time than I have on learning the ins and outs of patent law, *I think it's safe to say that the legal suits on both sides of any potential issue have come to the conclusion that this is OK*. That's good enough for me and it should be good enough for you. *And as much as a cover of this book may lead you to believe it's the same, this isn't the same gun*….(emphasis added)

44. On August 21, 2018, the NRA publication "Shooting Illustrated" published another review of the T/CR22. A true and accurate copy of that review is attached hereto as Exhibit D.

45. The August 21st article begins:

> All right, let's address the elephant in the room first. Yes, the Thompson/Center Arms T/CR22 looks like another popular semi-automatic .22 LR rifle ([cough] Ruger 10/22 [cough]). If you think this is intentional, well, you'd be correct – right on the Thompson/Center Arms spec sheet for the T/CR22 mentions "compatible with most aftermarket 10/22 parts and accessories."

Exhibit D, at p. 1.

46. The following excerpt from the NRA August 21st article states "[a] quick glance at the T/CR22 shows its similarities to the Ruger 10/22:"



*(l.) A quick glance at the T/CR22 shows its similarities to the Ruger 10/22., (ctr.) Generously sized and easy to operate, the bolt handle also locks back easily. (r.) Familiar in appearance, the T/CR22 magazine was rather difficult to load.*

47. On December 13, 2018, an online publication entitled "The Truth About Guns"[5] published a review of the T/CR22. A true and accurate copy of the review is attached hereto as Exhibit E.

48. The first paragraph of the review states as follows:

> There are a lot of words to describe what it takes to go directly up against one of the all-time best-selling semi-automatic rifles in the world. Audacity, optimism, bravery, insanity, intrepidity, recklessness, cojones and chutzpah are a few that come immediately to mind. But whatever the motivating force at Thompson/Center (read: Smith & Wesson or American Outdoor Brands) was behind the decision to challenge Ruger's mega-popular 10/22 platform with the T/CR22 .22 LR rifle, someone certainly did their homework.

Exhibit E.

49. These third party publications reveal what is patently obvious - defendants' rifle is confusingly similar to the Ruger 10/22 rifle and infringes upon Ruger's intellectual property rights.

50. The T/CR22 and Ruger 10/22 rifle are virtually identical and the following photographs depict the primary similarities:

**Ruger 10/22**          **T/CR22**



---

[5] This publication is owned by Wide Open Media Group in Austin, TX.



51. Focusing on the area of the rifle that contains the receiver and trigger assembly:

    a.  The stock on both rifles have a shallow u-shaped configuration which follows the outline of the bolt and ejection port;



    b.  The stock on both rifles rise up in a decorative fashion as it progresses towards the rear of the receiver;



    c.  The stock on the left-hand side of both rifles are flush with the tapered rear section of the receiver and (progressing toward the front of the rifle) both step downward to form a straight line on the left-hand side of the receiver;



    d.  The receivers on both rifles are of identical length and width;

e.  The receivers on both rifles are flat-sided and both taper downward towards the rear;

f.  The ejection port on both rifles have a step-up clearance



Step-Up

g.  The magazine for both rifles is flush with the bottom of the stock and is nearly as wide as it is long;



Notch

h.  The magazine well for both rifles are formed as part of the trigger guard/fire control housing and the receiver;

i.  There is a notch in the bottom of the stock just forward of the magazine well;

j.  The magazine well is visible from the bottom of the rifle;

k.  The magazine release on both rifles are inset below the bottom surface of the stock;



Trigger    Safety    Bolt Lock    Magazine Release

l.  Both rifles have a bolt lock which is a small metal plate inset below the bottom surface of the stock and adjacent to the magazine release and at the front of the trigger guard;

m.  There is a cylindrical cross-button safety on both rifles that is located on the trigger guard forward of the trigger;

n.  At the junction where the barrel and receiver meet, the receiver is flat and the height of the receiver is higher than the top of the barrel;



o.  At the junction where the barrel and receiver meet on both rifles, the front corners of the receivers are rounded;

p.  The branding for the rifle is located on the side of the receiver opposite the bolt.

52. Upon information and belief, when designing and manufacturing the T/CR22, the defendants intended to copy the 10/22 rifle.

53. Upon information and belief, when designing and manufacturing the T/CR22, the defendants did copy the 10/22 rifle.

54. The internal components of the T/CR22 receiver and the internal components of the 10/22 receiver are virtually identical. *See* the Side-By-Side Comparison attached hereto as Exhibit F.

55. The internal components of the T/CR22 trigger assembly and the internal components of the 10/22 trigger assembly are virtually identical.

56. The receiver and barreled action for both the T/CR22 and the 10/22 rifle are virtually identical.

57. Upon information and belief, the defendants designed the T/CR22 receiver to appear similar to the receiver on the 10/22 rifle.

58. The T/CR22 was designed to accept 10/22 component parts.

59. The 10/22 can operate with a receiver that has a different appearance than described above.

60. The T/CR22 can operate with a receiver that has a different appearance than described above.

61. The aesthetics of the receiver on the 10/22 rifle are not functional.

62. A receiver could be designed for the T/CR22 that looks dissimilar to the 10/22 receiver but preserves its function.

63. The T/CR22 receiver design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

64. Upon information and belief, the stock for defendants' T/CR22 is manufactured by Magpul Industries Corp. ("Magpul").

65. Upon information and belief, the stock for defendants' T/CR22 was selected because Magpul previously designed a similar stock to fit the 10/22 rifle.

66. Magpul also advertises its "Hunter X-22" stock as "an ergonomic, full-featured stock for the ubiquitous Ruger®10/22® rifle" that "is also compatible with the Thompson Center T/CR22." *See* www.magpul.com/products/hunter-x-22-stock-ruger-10-22.

67. The T/CR22 stock design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

68. The 10/22 rifle can operate with a stock that does not contain the decorative features described above.

69. The T/CR22 can operate with a stock that does not contain the decorative features described above.

70. The aesthetics of the stock on the 10/22 rifle are not functional.

71. A stock could be designed for the T/CR22 that looks dissimilar to the 10/22 stock but preserves its function.

72. The Ruger 10/22 magazine well is formed as part of the receiver and trigger guard and is visible from the bottom of the rifle.

73. The T/CR22 magazine well is formed as part of the receiver and trigger guard and is visible from the bottom of the rifle.

74. Upon information and belief, the defendants designed the T/CR22 magazine well to appear similar to the magazine well on the 10/22 rifle.

75. Upon information and belief, the defendants intended to copy the 10/22 magazine well when designing the T/CR22 magazine well.

76. Upon information and belief, the defendants manufactured the T/CR22 with a magazine well that is virtually identical in appearance to the 10/22 magazine well.

77. The 10/22 can operate with a magazine well that has a different appearance than described above.

78. The T/CR22 can operate with a magazine well that has a different appearance than described above.

79. The aesthetics of the magazine well on the 10/22 rifle are not functional.

80. A magazine well could be designed for the T/CR22 that looks dissimilar to the 10/22 magazine well but preserves its function.

81. The T/CR22 magazine well design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

82. The Ruger 10/22 magazine release is set into the bottom surface of the stock.

83. The T/CR22 magazine release is set into the bottom of the surface of the stock.

84. Upon information and belief, the defendants designed the T/CR22 magazine release to appear similar to the magazine release on the 10/22 rifle.

85. Upon information and belief, the defendants intended to copy the 10/22 magazine release when designing the T/CR22 magazine release.

86. Upon information and belief, the defendants manufactured the T/CR22 with a magazine release that is virtually identical in appearance to the 10/22 magazine release.

87. The 10/22 can operate with a magazine release that has a different appearance than described above.

88. The T/CR22 can operate with a magazine release that has a different appearance than described above.

89. The aesthetics of the magazine release on the 10/22 rifle are not functional.

90. A magazine release could be designed for the T/CR22 that looks dissimilar to the 10/22 magazine release but preserves its function.

91. The T/CR22 magazine release design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

92. The Ruger 10/22 rifle utilizes a cross-button safety which is located in the forward portion of the trigger guard.

93. The T/CR22 utilizes a cross-button safety which is located in the forward portion of the trigger guard.

94. Upon information and belief, the defendants designed the T/CR22 safety to appear similar to the safety on the 10/22 rifle.

95. Upon information and belief, the defendants intended to copy the 10/22 safety when designing the T/CR22 safety.

96. Upon information and belief, the defendants manufactured the T/CR22 with a safety that is substantially similar in appearance to the 10/22 safety.

97. The 10/22 rifle can operate with a safety that has a different appearance than described above.

98. The T/CR22 can operate with a safety that has a different appearance than described above.

99. The aesthetics of the safety on the 10/22 rifle are not functional.

100. A safety could be designed for the T/CR22 that looks dissimilar to the 10/22 safety but preserves its function.

101. The T/CR22 safety design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

102. The Ruger 10/22 rifle utilizes a toggle switch bolt lock which is located at the front of the trigger guard.

103. The T/CR22 utilizes a toggle switch bolt lock which is located at the front of the trigger guard.

104. Upon information and belief, the defendants designed the T/CR22 bolt lock to appear similar to the bolt lock on the 10/22 rifle.

105. Upon information and belief, the defendants intended to copy the 10/22 bolt lock when designing the T/CR22 bolt lock.

106. Upon information and belief, the defendants manufactured the T/CR22 with a bolt lock that is substantially similar in appearance to the 10/22 bolt lock.

107. The 10/22 rifle can operate with a bolt lock that has a different appearance than described above.

108. The T/CR22 can operate with a bolt lock that has a different appearance than described above.

109. The appearance and location of the bolt lock on the 10/22 rifle are not functional.

110. A bolt lock could be designed for the T/CR22 that looks dissimilar to the 10/22 bolt lock but preserves its function.

111. The T/CR22 bolt lock design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

112. The Ruger 10/22 trigger guard has an oval shape with the bolt lock and magazine release located directly forward of the trigger guard.

113. The T/CR22 trigger guard has an oval shape with the bolt lock and magazine release located directly forward of the trigger guard.

114. Upon information and belief, the defendants designed the T/CR22 trigger guard to appear similar to the trigger guard on the 10/22 rifle.

115. Upon information and belief, the defendants intended to copy the 10/22 trigger guard when designing the T/CR22 trigger guard.

116. Upon information and belief, the defendants manufactured the T/CR22 with a trigger guard that is virtually identical in appearance to the 10/22 trigger guard.

117. The 10/22 rifle can operate with a trigger guard that has a different appearance than described above.

118. The T/CR22 can operate with a trigger guard that has a different appearance than described above.

119. The shape and configuration of the trigger guard on the 10/22 rifle is not functional.

120. A trigger guard could be designed for the T/CR22 that looks dissimilar to the 10/22 trigger guard but preserves its function.

121. The T/CR22 trigger guard design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

122. The Ruger 10/22 barrel-receiver junction is designed such that where the barrel and receiver meet, the front face of the receiver is flat and the height of the receiver is higher than the top of the barrel.

123. The T/CR22 barrel-receiver junction is designed such that where the barrel and receiver meet, the front face of the receiver is flat and the height of the receiver is higher than the top of the barrel.

124. The Ruger 10/22 barrel-receiver junction is designed such that where the barrel and receiver meet, the receiver is rounded on each vertical corner.

125. The T/CR22 barrel-receiver junction is designed such that where the barrel and receiver meet, the receiver is rounded on each vertical corner.

126. Upon information and belief, the defendants designed the T/CR22 barrel-receiver junction to appear similar to the barrel-receiver junction on the 10/22 rifle.

127. Upon information and belief, the defendants intended to copy the 10/22 barrel-receiver junction when designing the T/CR22 barrel-receiver junction.

128. Upon information and belief, the defendants manufactured the T/CR22 with a barrel-receiver junction that is virtually identical in appearance to the 10/22 barrel-receiver junction.

129. The 10/22 rifle can operate with a barrel-receiver junction that has a different appearance than described above.

130. The T/CR22 can operate with a barrel-receiver junction that has a different appearance than described above.

131. The aesthetics of the barrel-receiver junction on the 10/22 rifle are not functional.

132. A barrel-receiver junction could be designed for the T/CR22 that looks dissimilar to the 10/22 barrel-receiver junction but preserves its function.

133. The T/CR22 barrel-receiver junction design was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

134. The branding for the Ruger 10/22 rifle is located on the receiver opposite the bolt.

135. The branding for the T/CR22 is located on the receiver opposite the bolt.

136. Upon information and belief, the defendants selected the T/CR22 branding location to be similar to branding location on the 10/22 rifle.

137. Upon information and belief, the defendants intended to copy the 10/22 rifle branding location when selecting the T/CR22 branding location.

138. Upon information and belief, the defendants manufactured the T/CR22 with a branding location that is virtually identical to the 10/22 branding location.

139. The 10/22 rifle can operate with the branding located in a different place on the receiver.

140. The T/CR22 can operate with the branding located in a different place on the receiver.

141. The location of the branding on the 10/22 rifle is not functional.

142. The branding could be located in a different place on the T/CR22 than on the 10/22 rifle, but still meet legal requirements.

143. The T/CR22 branding location was selected because defendants wanted the T/CR22 to look like the 10/22 rifle.

### DEFENDANTS' ACTIONS: MARKETING AND SALE

144. Upon information and belief, the defendants have displayed the T/CR22 at trade shows in the United States.

145. Upon information and belief, the defendants have displayed the T/CR22 at trade shows outside of the United States.

146. The defendants market the T/CR22 on their website.

147. Upon information and belief, the defendants have featured the T/CR22 in a brochure.

148. Upon information and belief, the defendants promoted the T/CR22 by granting an interview to the NRA publication "Shooting Illustrated."

149. Upon information and belief, the T/CR22 is offered for sale in New Hampshire.

150. Upon information and belief, the defendants (either separately or through agents), distribute the T/CR22 to Bass Pro Shops throughout the United States.

151. Upon information and belief, the T/CR22 is offered for sale throughout the United States.

152. Upon information and belief, the defendants have sold T/CR22s to customers outside of the United States.

153. The T/CR22 embodies the external design, the distinctive appearance, and overall image of the Ruger 10/22 rifle so as to cause a likelihood of confusion as to the source of the T/CR22.

154. By marketing, selling, and/or distributing the T/CR22, defendants are intentionally confusing the public into believing that the defendants and/or the T/CR22 are in some manner connected with, sponsored by, affiliated with, or approved by Ruger.

155. Defendants' conduct infringes the exclusive trade dress rights of Ruger in the Ruger 10/22 rifle.

### COUNT I
### Trade Dress Infringement (15 U.S.C. § 1125(a))
### Against All Defendants

156. Ruger re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 155 of this Complaint.

157. The trade dress of the Ruger 10/22 rifle is used in commerce, non-functional, inherently distinctive, and has acquired secondary meaning in the marketplace.

158. By manufacturing, marketing, and selling the T/CR22, the defendants have misappropriated Ruger's trade dress in the 10/22 rifle.  The defendants' unlawful and unauthorized uses of Ruger's trade dress are intentionally calculated to cause consumers and third-party viewers to mistake, or be confused about, the source of origin of the T/CR22.  All of these activities constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

159. Defendants' unauthorized use of Ruger's trade dress is willful and intentional.

160. If not enjoined by this Court, the defendants will continue their acts of unfair competition in the unauthorized use of the Ruger trade dress, which acts have caused, and will continue to cause, Ruger immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), Ruger is entitled to an Order from this Court enjoining defendants' unlawful activities. Ruger has no adequate remedy at law.

161. As a result of defendants' acts of unfair competition, Ruger has been, and continues to be, irreparably harmed.  Pursuant to 15 U.S.C. §§ 1117 and 1118, Ruger is entitled to a judgment for: (1) defendants' profits; (2) damages sustained by Ruger; (3) treble damages; (4) Ruger's attorneys' fees; (5) Ruger's costs of this action; (6) interest; and (7) an Order that the defendants turn over to Ruger for destruction all T/CR22s and all means of marketing, selling or making the T/CR22.

**COUNT II**
**Consumer Protection Act (RSA 358-A, et seq.)**
**Against All Defendants**

162. Ruger re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 161 of this Complaint.

163. Defendants are engaged in trade or commerce as that term is defined in RSA 358-A:1, II.  Defendants have engaged in conduct that creates confusion and misunderstanding among the purchasing public.  These acts constitute an unfair and deceptive act or practice in the conduct of trade or commerce within New Hampshire under the Consumer Protection Act pursuant to RSA 358-A:2.

164. Ruger seeks its actual damages as a result of defendants' violation of RSA 358-A, *et seq.*, costs of the suit, and reasonable attorneys' fees.  Furthermore, since defendants' conduct amounts to a "willful and knowing" violation of the Consumer Protection Act under RSA 358-A:10, Ruger is also entitled to double or treble damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.      That the defendants, their affiliates, subsidiaries, corporate officers, agents, servants, employees, assigns and attorneys, and those persons in active concert with the defendants, be preliminarily and permanently enjoined and restrained:

1.   From using the Ruger trade dress in connection with the advertising, promotion, offering for sale or sale of any T/CR22 or any other products;

2.   From using any reproduction, counterfeit, copy or colorable imitation of the Ruger trade dress in connection with the advertising, promotion,

offering for sale, or sale of any T/CR22 or any other product not associated with Ruger;

      3.  From using in any manner the Ruger 10/22 rifle's trade dress including, but not limited to, the look and feel of the 10/22 rifle, or any product design that wholly or partially incorporates Ruger's unique 10/22 rifle design in connection with the promotion, advertising, marketing, distribution or sale of any products not associate with Ruger; and

    B.  That defendants be ordered to turn over to Ruger for destruction all T/CR22's, signs, prints, print material, advertisements, and other representations and means for reproducing the T/CR22, in their possession, custody or control bearing the Ruger trade dress, or any colorable imitation thereof, and to destroy, or remove all other uses or designations that are confusingly similar to Ruger's trade dress.

    C.  That defendants be directed to file with the Court and serve on Ruger, no later than thirty (30) days after issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which defendant has complied with the injunction.

    D.  That an accounting be conducted and judgment be rendered against defendants for all profits received by the defendants, directly or indirectly, from their sales and/or advertising of any product(s) bearing Ruger's trade dress or any trade dress confusingly similar to Ruger's, all damages sustained by Ruger because of defendants' trade dress infringement, unfair

competition, and injury to Ruger's business reputation and goodwill, and/or dilution of Ruger's trade dress pursuant to 15 U.S.C. § 1117 *et seq.*, and defendants' deceptive trade practices and unfair competition as cognizable under New Hampshire law.

E.     That the actual damages assessed against the defendants be enhanced as provided by 15 U.S.C. § 1117, as well as double or treble damages as permitted under New Hampshire law.

F.     That defendants be required to pay to Ruger monetary damages to be used for corrective advertising to be conducted by Ruger.

G.     That Ruger be entitled to recover its costs associated with this lawsuit including, but not limited to, reasonable attorneys' fees and expenses.

H.     For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**ORR & RENO, P.A.**

Dated: July 31, 2019          By:     /s/ James F. Laboe
                                      James F. Laboe (N.H. Bar No. 14571)
                                      P.O. Box 3550
                                      Concord, New Hampshire 03302-3550
                                      Telephone:  (603) 224-2381
                                      Facsimile:  (603) 223-2318

                                      *Attorneys for Plaintiff*
                                      *Sturm, Ruger & Co., Inc.*

2494136