## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| STURM, RUGER & CO., INC. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 19-cv-801-JL |
|  | ) |
| AMERICAN OUTDOOR BRANDS | ) |
| CORPORATION, | ) JURY TRIAL DEMANDED |
| SMITH & WESSON INC, and | ) |
| THOMPSON/CENTER ARMS, | ) |
| COMPANY, LLC, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |

## FIRST AMENDED COMPLAINT

Plaintiff Sturm, Ruger & Co., Inc. ("Ruger") alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE CASE

1.     Ruger seeks injunctive relief and damages for acts of trade dress infringement, unfair competition, and deceptive trade practices by the defendants in violation of the laws of the United States and the State of New Hampshire.

## THE PARTIES

2.     Plaintiff Ruger is a corporation organized and existing under the laws of the State of Delaware, with its main corporate offices located at 1 Lacey

Place, Southport, Connecticut 06890.  Ruger is a leading manufacturer of firearms in the United States with product distribution throughout the world.  Ruger manufactures firearms in three of the four key categories, namely rifles, pistols, and revolvers.  Ruger manufactures, and for many years has manufactured, its popular 10/22® rifle at its facility located in Newport, New Hampshire.

3.      Defendant American Outdoor Brands Corporation ("AOBC") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104.

4.      Defendant Smith & Wesson Inc. ("S&W") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104. S&W is a wholly owned subsidiary of AOBC and is registered to do business in the State of New Hampshire.

5.      Defendant Thompson Center Arms Company, LLC ("Thompson/Center") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 2100 Roosevelt Avenue, Springfield, Massachusetts 01104.  Thompson/Center is a subsidiary of S&W.

6.      AOBC owns and/or controls all of S&W's and Thompson/Center's products and/or branding.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to 15 U.S.C. §1121 (actions arising under the Lanham Act), 15 U.S.C. §1125(a) (trade dress infringement and unfair competition under the Lanham Act), 28 U.S.C. §1331 (actions arising under the laws of the United States), and 28 U.S.C. §1338(a) (actions arising under an Act of Congress relating to trademarks).  This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory law pursuant to 28 U.S.C. §1367(a).

8.      This Court has personal jurisdiction over each defendant because they are doing business in the State of New Hampshire.  S&W is registered to do business in New Hampshire and, upon information and belief, S&W operates a research and development facility in Somersworth, New Hampshire.  Moreover, the defendants have purposefully directed their activities to New Hampshire by knowingly and intentionally marketing, selling, and/or distributing the infringing rifle at issue in this lawsuit to consumers in the State of New Hampshire and throughout the United States.

9.      This Court also has personal jurisdiction over the defendants because Ruger suffers damage to its intellectual property rights here in New Hampshire.  The defendants have copied the trade dress of the popular Ruger® 10/22® rifle that is being manufactured in Newport, New Hampshire.  By copying the rifle, the defendants would have noticed that Ruger's rifle is

stamped "Newport, NH" in accordance with applicable BATFE[1] regulations.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C.

§1391(b) and (c) because the firearm at issue is primarily manufactured by Ruger

in the State of New Hampshire.  Damages from defendants' trade dress

infringement are suffered by Ruger in the State of New Hampshire, and the bulk

of Ruger's witnesses are located here.

## FACTS COMMON TO ALL COUNTS

11.     In the early 1960's, William Ruger, in collaboration with Harry

Sefried and Doug McClenahan, developed the 10/22® autoloading rifle (the

"10/22 rifle").[2]  The 10/22 rifle was formally launched in 1964 and, since then,

has become one of the most popular .22 caliber rifles in firearms history.  Ruger

has sold millions of 10/22 rifles worldwide and its popularity is evidenced by

the fact that in 2014—the rifle's 50th anniversary—it remains one of the most

popular firearms in the Ruger lineup.  As one commenter explains:

> Ever since the advent of the .22 [long rifle] cartridge in 1887, it has
> been a rite of passage for many "good (and responsible) little
> boys" to receive a rifle chambered in such for Christmas. In the
> past, those rifles have included the Stevens No. 141/2 Little Scout
> single-shot, Winchester 1890 pump and Remington Model 511
> Scoremaster bolt-action. But beginning in 1964, the enticingly
> long, brightly wrapped package under the tree was likely to
> contain a Ruger 10/22, which eventually became one of the most

---

[1] Bureau of Alcohol Tobacco Firearms and Explosives.
[2] An autoloading (or semi-automatic) rife is a rifle that fires a single round each time the trigger is pulled, uses gas, blowback, or recoil to eject the spent cartridge after the round has traveled down the barrel, chambers a new cartridge from its magazine, and resets the action; enabling another round to be fired once the trigger is pulled again.

popular .22 semi-autos in firearm history.[3]

12.     Over the years, Ruger has introduced a variety of configurations

and finishes, but the original design and concept for the 10/22 rifle has remained

virtually the same since 1964.

## THE RUGER 10/22 TRADE DRESS

13.     The following is a representative sample of the different varieties of

the 10/22 rifle that Ruger currently offers for sale:



---

[3] Rick Hacker, <u>Ruger 10/22 A Look At the History of One of the Most Popular Rimfire Rifles Ever Produced</u>, Shooting Illustrated (Feb. 24, 2012)  http://www.shootingillustrated.com/index.php/22082/ruger-1022/.



14.     The overall configuration and external appearance of the Ruger 10/22 rifle is unique and distinctive from .22 caliber rifles produced by other manufacturers.

15.     The distinctive appearance of the Ruger 10/22 rifle is instantly recognizable by those familiar with rifles.

16.     The Ruger 10/22 rifle has the following (non-exhaustive) features:

      a.     The receiver has flat sides that intersect with its top to form edges that sit lower than the top of the receiver.  The rear portion of the receiver slopes downward towards the stock.



b.    The portion of the stock immediately below the ejection port forms a shallow U shape, which follows the contour of the ejection port.  The stock steps up towards the receiver as it extends rearward and then slopes downward to follow the general contour of the rear portion of the receiver.



DOWNWARD
SLOPE

STOCK
STEP-UP

U SHAPE STOCK

     c.     The ejection port is rounded in the front and its bottom edge

steps up towards the rear.



EJECTION PORT

STEP UP

ROUNDED FRONT

     d.     The magazine is flush with the bottom of the stock.

e.      The magazine well has two decoratively shaped quarter circles toward its front and two decoratively shaped quarter ovals towards its rear that come together to form a Y shape around the magazine release.



QUARTER          QUARTER
CIRCLES          OVALS

f.      The finger relief notch is a decorative semicircle.



FINGER RELIEF
NOTCH

g.      The magazine release is forward of the safety/bolt lock housing, protrudes from the rear of the magazine well, is angled rearward, has a triangular profile, and is approximately as long as the safety/bolt lock housing.



h.      The trigger guard extends forward to a trapezoid-shaped housing with concave front and rear edges, incorporates a circular cross bolt safety, and incorporates a bolt lock toggle switch (formed by a small metal plate at the front edge of the fire control housing).



CIRCULAR
CROSS BOLT
SAFETY

TRAPEZOID-SHAPED
HOUSING WITH
CONCAVE FRONT
AND REAR EDGES

BOLT LOCK
TOGGLE

   i.  The center-front face of the receiver is flat (at the junction

where the barrel and receiver meet), the height of the receiver is higher than the

top of the barrel, and the receiver is rounded on each vertical corner.



RECEIVER HEIGHT

BARREL HEIGHT

FLAT RECEIVER
FRONT

ROUNDED RECEIVER
CORNER

   17.  The trade dress of the 10/22 rifle is an arbitrary combination of

these elements, which form a nonfunctional design.

18.     Ruger's trade dress is the result of specific design choices made during the development of the rifle to achieve the final appearance and was not dictated by utilitarian purposes.

19.     It is not necessary to make a semi-automatic .22 caliber rifle that looks like the 10/22 rifle to perform the same functions or to be successful in the marketplace.

20.     In addition to Ruger, recognized manufacturers of semi-automatic .22 caliber rifles include Winchester, Marlin, Savage, Mossberg, Remington, and CZ-USA.

21.     Semi-automatic .22 rifles from Winchester, Marlin, Savage, Mossberg, Remington, CZ-USA, and others each have their own trade dress and none would likely be confused with a Ruger 10/22 rifle or with one another.

22.     Semi-automatic .22 rifles from Winchester, Marlin, Savage, Mossberg, Remington, CZ-USA, and others all successfully perform the same functions as the 10/22 rifle, as evidenced by the fact that they are widely sold and all meet the requirements of a semi-automatic .22 caliber rifle.  In fact, S&W sells a semi-automatic .22 rifle, the M&P®15-22 (including many variants), that falls into this category and does not mimic or violate the 10/22 rifle's trade dress. True and accurate photographs of these rifles are attached hereto as Exhibit A.

23.     The trade dress of the Ruger 10/22 rifle has acquired a substantial level of source identifying capability, *i.e.* secondary meaning.

24.     This secondary meaning is the result of, among other things, the widespread popularity and use of the Ruger 10/22 rifle worldwide and especially throughout the United States and Canada.

25.     This secondary meaning is also the by-product of Ruger's extensive marketing and promotional efforts, along with third-party recognition and publicity.

26.     The Ruger 10/22 rifle is promoted by independent third parties (*e.g.* Davidsons, Inc.).

27.     Ruger has promoted the sale of the 10/22 rifle through extensive advertising in newspapers and magazines, as well as appearances at trade shows and other events worldwide and, in particular, the United States and Canada.

28.     Ruger has spent millions of dollars marketing the 10/22 rifle.

29.     Publications disseminated throughout the United States and abroad have included feature articles about Ruger's 10/22 rifle.

30.     The 10/22 rifle has been generally recognized in the press as the leading .22 caliber semi-automatic rifle in the worldwide market.

31.     Articles featuring the 10/22 rifle have also featured its distinctive appearance.  True and accurate copies of a few such advertisements and publications are attached hereto as Exhibit B.

32.     Ruger has developed valuable goodwill in the trade dress of the 10/22 rifle and the relevant public has come to know, recognize, and identify the

distinctive look and appearance of this .22 caliber semi-automatic rifle as originating from one source (i.e., Ruger).

33.     Ruger has not licensed or granted to the defendants the authority, permission, or any other right to make, manufacture, use, offer for sale, or sell a rifle that copies or otherwise utilizes the trade dress of the Ruger 10/22 rifle or that resembles the 10/22 rifle.

<u>**DEFENDANTS' ACTIONS:  DESIGN AND MANUFACTURE**</u>

34.     The defendants have purposefully advertised, promoted, offered for sale, sold, and/or distributed, and continue to advertise, promote, offer for sale, sell, and/or distribute a duplicate of Ruger's 10/22 rifle in an attempt to capitalize on the popularity and goodwill associated with the 10/22 rifle, built by Ruger over five decades.  The defendants' rifle is known as the "T/CR22" and currently comes in various versions (all containing the offending trade-dress elements)[4], e.g.:



---

[4] References to the "T/CR22" include all of these variations.



35.     On or about May 3, 2018 and in conjunction with the National Rifle

Association ("NRA") Annual Meeting, defendants launched the T/CR22.

36.     The defendants market the T/CR22 with the tagline "Rimfire

Redefined."[5]

37.     On May 9, 2018, the NRA publication "Shooting Illustrated"

published a review of the T/CR22.  A true and accurate copy of that review is

attached hereto as Exhibit C.

38.     The May 9th NRA article quotes Danielle Sanville, brand manager

of Thompson/Center Arms as saying (in part):  "[w]e've taken the opportunity

to *contemporize a classic* through advancements in design, and we are confident

that our customers will appreciate the features in the new T/CR22 rifle."  *Id.*

(emphasis added).

39.     Immediately after the Thompson/Center quote reference above,

the NRA article continues:

> Which *classic* are they bringing into the 21st century? A few clues
> lie in the design of the rifle. Rimfire aficionados might notice that
> the overall profile of the rifle *looks similar* to another popular semi-
> automatic rimfire on the market, *and they'd be right*. The *receiver is*

---

[5] Rimfire is a method of ignition for metallic firearm cartridges.  The .22 caliber long rifle cartridge is a
rimfire ammunition that is used in both the 10/22 and the T/CR22.

> *built with the same footprint as the popular Ruger 10/22*, enabling the all-new T/CR22 to fit into any aftermarket stock fit for Ruger's rimfire.

Exhibit C, at p. 2 (emphasis added).

40.     Ruger itself has been contemporizing the 10/22 rifle for decades.

41.     On or about July 26, 2018, the NRA publication "American Hunter" published a video on YouTube reviewing the T/CR22.  That video review can be found at:  https://www.youtube.com/watch?v=DFhEv7M7R4A.

42.     The July 26th video review was conducted by Jon Draper, Associate Editor of American Hunter.  Mr. Draper begins his review, in part, with the following statement:

> Don't let your eyes deceive you. While this may look like another version of *that common rimfire* this little semi-auto owes its allegiance to Thompson/Center…First things first, yes, this gun looks familiar. Very familiar, in fact. It also happens to function so closely to that *other* gun that stamped right on the T/CR22 spec sheet reads the phrase "compatible with most aftermarket 10/22 parts and accessories"…. (emphasis added)

Mr. Draper continues:

> How is this possible? Well, without spending more money and time than I have on learning the ins and outs of patent law, *I think it's safe to say that the legal suits on both sides of any potential issue have come to the conclusion that this is OK.* That's good enough for me and it should be good enough for you. *And as much as a cover of this book may lead you to believe it's the same, this isn't the same gun*…. (emphasis added).

43.     On August 21, 2018, the NRA publication "Shooting Illustrated" published another review of the T/CR22.  A true and accurate copy of that review is attached hereto as Exhibit D.

44.     The August 21st article begins:

> All right, let's address the elephant in the room first. Yes, the Thompson/Center Arms T/CR22 looks like another popular semi-automatic .22 LR rifle ([cough] Ruger 10/22 [cough]). If you think this is intentional, well, you'd be correct – right on the Thompson/Center Arms spec sheet for the T/CR22 mentions "compatible with most aftermarket 10/22 parts and accessories."

Exhibit D, at p. 1.

45.     The following excerpt from the NRA August 21st article states "[a] quick glance at the T/CR22 shows its similarities to the Ruger 10/22:"



*(l.) A quick glance at the T/CR22 shows its similarities to the Ruger 10/22., (ctr.) Generously sized and easy to operate, the bolt handle also locks back easily. (r.) Familiar in appearance, the T/CR22 magazine was rather difficult to load.*

46.     On December 13, 2018, an online publication entitled "The Truth About Guns"[6] published a review of the T/CR22.  A true and accurate copy of the review is attached hereto as Exhibit E.

47.     The first paragraph of the review states as follows:

> There are a lot of words to describe what it takes to go directly up against one of the all-time best-selling semi-automatic rifles in the world. Audacity, optimism, bravery, insanity, intrepidity, recklessness, cojones and chutzpah are a few that come immediately to mind. But whatever the motivating force at Thompson/Center (read: Smith & Wesson or American Outdoor Brands) was behind the decision to challenge Ruger's mega-popular 10/22 platform with the T/CR22 .22 LR rifle, someone certainly did their homework.

---

[6] This publication is owned by Wide Open Media Group in Austin, TX.

Exhibit E.

48.    These third-party publications reveal what is patently obvious—

defendants' rifle is strikingly similar to the Ruger 10/22 rifle.

49.    The T/CR22 and Ruger 10/22 rifle are virtually identical and the

following photographs depict the primary similarities:

**Ruger 10/22**                              **T/CR22**



50.    Focusing on the area of the rifle that contains the receiver and

trigger assembly:

        a.    The stock on both rifles has a shallow U-shaped

configuration that follows the contour of the ejection port (as

shown below);

**Ruger 10/22**            **T/CR22**



b.     The stock on both rifles steps up towards the receiver as it

extends rearward and then slopes downward to follow the

general contour of the rear portion of the receiver (as shown

below);

**Ruger 10/22**            **T/CR22**



c.     The stock towards the rear of both rifles is flush with the

sloped rear section of the receiver and (progressing toward

the front of the rifle) both slope downward to form a straight

line on the rear of the receiver (as shown below);

**Ruger 10/22**            **T/CR22**



d.     The receiver on both rifles is of identical length and width;

e.  The receiver on both rifles has flat sides that intersect with its top to form edges that sit lower than the top of the receiver;

f.  The ejection port on both rifles is rounded in the front and its bottom edge steps up towards the rear (as shown below);

**Ruger 10/22**                    **T/CR22**



g.  The magazine for both rifles is visible from the bottom and flush with the bottom of the stock (as shown below);

**Ruger 10/22**                    **T/CR22**



h.  Both rifles have a finger relief notch comprised of a decorative semicircle (as shown immediately above);

i.  The magazine well for both rifles has two decoratively shaped quarter circles toward its front and two decoratively shaped quarter ovals towards its rear that come together to

form a Y shape around the magazine release (as shown

immediately above);

j.      The magazine release for both rifles is forward of the

safety/bolt lock housing, protrudes from the rear of the

magazine well, is angled rearward, has a triangular profile,

and is approximately as long as the safety/bolt lock housing

(as shown below);

**Ruger 10/22**                                    **T/CR22**



k.      The trigger guard in both rifles extends forward to a

trapezoid-shaped housing with concave front and rear

edges, incorporates a circular cross bolt safety, and

incorporates a bolt lock toggle switch (formed by a small

metal plate at the front edge of the fire control housing) (as

shown immediately above); and

l.      The center-front face of the receiver in both rifles is flat (at

the junction where the barrel and receiver meet), the height

of the receiver is higher than the top of the barrel, and the

receiver is rounded on each vertical corner (as shown

below).

**Ruger 10/22**                                   **T/CR22**



51.     When designing and manufacturing the T/CR22, the defendants intended to copy the 10/22 rifle.

52.     When designing and manufacturing the T/CR22, the defendants did copy the 10/22 rifle.

### DEFENDANTS' ACTIONS:  MARKETING AND SALE

53.     The defendants have displayed the T/CR22 at trade shows.

54.     The defendants market the T/CR22 on their website.

55.     The defendants have featured the T/CR22 in brochures.

56.     The defendants have promoted the T/CR22 by granting an interview to the NRA publication "Shooting Illustrated."

57.     The T/CR22 is offered for sale in New Hampshire, throughout the United States, and outside the United States.

58.     Defendants (either separately or through agents), distribute the T/CR22 to Bass Pro Shops throughout the United States.

59.     The T/CR22 embodies the external design, distinctive appearance, and overall image of the Ruger 10/22 rifle so as to cause a likelihood of confusion as to the source of the T/CR22.

60. By marketing, selling, and/or distributing the T/CR22, defendants are intentionally confusing the public into believing that the defendants and/or the T/CR22 are in some manner connected with, sponsored by, affiliated with, or approved by Ruger.

61.     When the T/CR22 is used with stocks that resemble those made for the 10/22 rifle (e.g., as shown below), the likelihood of confusion is exacerbated.



62.     Defendants' conduct infringes the exclusive trade dress rights of

Ruger in the Ruger 10/22 rifle.

## COUNT I
### Trade Dress Infringement (15 U.S.C. § 1125(a))
### <u>Against All Defendants</u>

63.     Ruger re-alleges and incorporates herein by reference the

allegations contained in Paragraphs 1 through 62 of this Complaint.

64.     The trade dress of the Ruger 10/22 rifle is used in commerce, is

non-functional, is distinctive, and has acquired secondary meaning in the

marketplace.

65.     By manufacturing, marketing, and selling the T/CR22, the

defendants have misappropriated Ruger's trade dress in the 10/22 rifle.  The

defendants' unlawful and unauthorized uses of Ruger's trade dress are likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection, or association of the defendants with Ruger, or as to the origin,

sponsorship, or approval of defendants' goods or commercial activities in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.     Defendants' unauthorized use of Ruger's trade dress is willful and

intentional.

67.     If not enjoined by this Court, the defendants will continue their acts

of unfair competition in the unauthorized use of the Ruger trade dress, which

have caused, and will continue to cause, Ruger immediate and irreparable harm.

Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), Ruger is entitled to an

Order from this Court enjoining defendants' unlawful activities.  Ruger has no

adequate remedy at law.

68.     As a result of defendants' acts of unfair competition, Ruger has

been, and continues to be, irreparably harmed.  Pursuant to 15 U.S.C. §§ 1117 and

1118, Ruger is entitled to a judgment for, among other things:  (1) defendants'

profits (increased); (2) damages sustained by Ruger; (3) treble damages; (4)

Ruger's attorneys' fees; (5) Ruger's costs of this action; (6) interest; and (7) an

Order that the defendants turn over to Ruger for destruction all T/CR22s and all

means of marketing, selling or making the T/CR22.

**COUNT II**
**Consumer Protection Act (RSA 358-A, et seq.)**
<u>**Against All Defendants**</u>

69.     Ruger re-alleges and incorporates herein by reference the

allegations contained in Paragraphs 1 through 68 of this Complaint.

70.     Defendants are engaged in trade or commerce as that term is

defined in RSA 358-A:1, II.  Defendants have engaged in conduct that creates

confusion and misunderstanding among the purchasing public.  These acts

constitute an unfair and deceptive act or practice in the conduct of trade or

commerce within New Hampshire under the Consumer Protection Act pursuant

to RSA 358-A:2.

71.     Ruger seeks its actual damages as a result of defendants' violation

of RSA 358-A, *et seq.*, costs of the suit, and reasonable attorneys' fees.

Furthermore, because defendants' conduct amounts to a "willful and knowing"

violation of the Consumer Protection Act under RSA 358-A:10, Ruger is also
entitled to double or treble damages.

**PRAYER FOR RELIEF**

WHEREFORE, Ruger prays for the following relief:

A.     That the defendants, their affiliates, subsidiaries, corporate officers,
agents, servants, employees, assigns and attorneys, and those persons in active
concert with them, be preliminarily and permanently enjoined and restrained:

1.     From using the Ruger trade dress in connection with the
manufacture, advertising, promotion, offering for sale, or sale of any T/CR22 or
any other products;

2.     From using any reproduction, counterfeit, copy or colorable
imitation of the Ruger trade dress in connection with the manufacture,
advertising, promotion, offering for sale, or sale of any T/CR22 or any other
product; and

3.     From using in any manner the Ruger 10/22 rifle's trade
dress including, but not limited to, the look and feel of the 10/22 rifle, or any
product design that wholly or partially incorporates Ruger's unique 10/22 rifle
design in connection with the manufacture, promotion, advertising, marketing,
distribution, or sale of any products.

B.     That defendants be ordered to turn over to Ruger for destruction all
T/CR22's, other products, signs, prints, print material, advertisements, and other
representations and means for reproducing the T/CR22, in their possession,

custody, or control bearing or incorporating the Ruger trade dress, or any colorable imitation thereof, and to destroy, or remove all other uses or designations that are confusingly similar to Ruger's trade dress.

C.      That defendants be directed to file with the Court and serve on Ruger, no later than thirty (30) days after issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which defendant has complied with the injunction.

D.      That an accounting be conducted and judgment be rendered against defendants for all profits received by the defendants (at an increased amount), directly or indirectly, from their sales and/or advertising of any product(s) bearing or incorporating Ruger's trade dress or any trade dress confusingly similar to Ruger's, and all damages sustained by Ruger because of defendants' trade dress infringement, unfair competition, and injury to Ruger's business reputation and goodwill pursuant to 15 U.S.C. § 1117 *et seq.*, and defendants' deceptive trade practices and unfair competition as cognizable under New Hampshire law.

E.      That the actual damages assessed against the defendants be enhanced as provided by 15 U.S.C. § 1117, as well as double or treble damages as permitted under New Hampshire law.

F.      That defendants be required to pay to Ruger monetary damages to be used for corrective advertising to be conducted by Ruger.

G.      That Ruger be entitled to recover its costs associated with this

lawsuit including, but not limited to, reasonable attorneys' fees and expenses.

      H.     For such other and further relief as this Court deems just and

appropriate.

                           Respectfully submitted,


                           **ORR & RENO, P.A.**

Dated: March 6, 2020               By: /s/ James F. Laboe
                           James F. Laboe (N.H. Bar No. 14571)
                           P.O. Box 3550
                           Concord, New Hampshire 03302-3550
                           Telephone:  (603) 224-2381
                           Facsimile:  (603) 223-2318

                           **FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

                           Douglas A. Rettew (*pro hac vice*)
                           901 New York Avenue, NW
                           Washington, D.C. 20001-4413
                           Telephone:  (202) 408-4161
                           Facsimile:  (202) 408-4400

                           *Attorneys for Plaintiff*
                           *Sturm, Ruger & Co., Inc.*

2686393